## WYANT v. DIRECTOR OF AGRICULTURE.

1. CONSTITUTIONAL LAW—POLICE POWER—DUE PROCESS.
   Provision of the Constitution declaring that property shall not
   be taken without due process of law is inapplicable, where
   the exercise of police power is applicable (Const 1908, art 2,
   § 16).

2. SAME — POLICE POWER — PREVENTION OF CONTAGIOUS DISEASES
   AMONG ANIMALS.
   A State law enacted to prevent the spread of contagious or
   infectious diseases among animals is a valid exercise of
   police power.

3. SAME—DESTRUCTION OF PROPERTY—SPREAD OF DISEASE.
   Properly constituted public authorities have the right to destroy
   property deemed likely to spread disease.

4. ANIMALS — BEES — IMPORTATION IN COMBS, USED HIVES OR
   EQUIPMENT — DESTRUCTION — STATUTES — CONSTITUTIONAL LAW
   — PUBLIC HEALTH.
   Statute providing for the destruction of bees imported into the
   State in combs, in used hives or in used equipment is con-
   stitutional, since it is in the interest of public health (CL
   1948, §§ 286.13, 286.18).

5. COSTS—CONSTRUCTION OF STATUTE—IMPORTATION OF BEES.
   No costs are allowed in suit to enjoin enforcement of statute
   barring importation into this State of bees in combs, used
   hives or equipment, as the construction of a public act is
   involved (CL 1948, §§ 286.13, 286.18).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 11 Am Jur, Constitutional Law § 262.
[2-4] 2 Am Jur, Animals §§ 157–159.
[2-4] Constitutionality of statute for control of diseases of live-
   stock. 65 ALR 525.
[5] 14 Am Jur, Costs § 91.

Appeal from Ingham; Coash (Louis E.), J. Submitted June 15, 1954. (Docket No. 60, Calendar No. 46,112.) Decided October 4, 1954. Rehearing denied November 29, 1954.

Bill by Ross E. Wyant against Charles Figy, director of the State department of agriculture, to restrain enforcement of statute relative to importation of bees. Decree for plaintiff. Defendant appeals. Reversed.

*Gregg, Glassen, Parr & Rhead,* for plaintiff.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Elbern Parsons,* Chief Assistant Attorney General, and *Daniel J. O'Hara,* Assistant Attorney General, for defendant.

SHARPE, J. Plaintiff, Ross E. Wyant, owns a bee farm in the State of Ohio close to the southern Michigan line. For some time prior to the commencement of this suit he had moved bees from Ohio into Michigan and later returned them to Ohio. The movement of bees is seasonal, being influenced by crops growing in a certain area at a given time. In such movement bees are transported in hives, combs or other used apiary appliances. It is a known fact that bees pollinate various crops in the vicinity where the hives are located. Bees are subject to a disease known as foul brood. The only practical method of determining whether a colony of bees is infected with the disease is the visible evidence of dead brood in a hive. It is also possible that in the absence of dead brood around a hive that the bees may be infected. It is also possible for the disease to be carried in honey. The record shows that while the disease can be shipped in packaged bees, the disease is more likely to spread by the shipment of bees on combs and honey in used containers.

In August, 1948, plaintiff instituted a suit in chancery to restrain the defendant from enforcing the following sections of the statutes, CL 1948, § 286.13 (Stat Ann 1951 Rev § 12.143), and CL 1948, § 286.18 (Stat Ann 1951 Rev § 12.148):

"It shall be unlawful for any person, firm, corporation or transportation company to bring into this State any bees on combs, used hives or other used apiary appliances from any other States or other countries: Provided, however, That common carriers may transport bees and apiary appliances through this State if the shipment originated outside of this State and is destined for some point outside of it."

"In addition to the penalties hereinbefore provided, bees on combs, used hives or other used apiary appliances brought into this State in violation of the provisions of this act shall be confiscated and destroyed."

Plaintiff urges that the State may not unreasonably exclude from importation articles of commerce for its own protection and to prevent the spread of disease within its border, and that the above statutes amount to a State regulation of interstate commerce and involve an imposition of a direct burden and a discrimination against interstate commerce.

The trial court, after hearing testimony, held the act unconstitutional. In an opinion, the court said:

"Several experts testified and it was apparent from their testimony that it would be difficult to provide for inspection that would guarantee that bees brought into Michigan in any manner would be free from disease. As a matter of fact, the record indicates that an adult bee may be laden with disease and yet the most diligent of inspections without killing the bee would not show or demonstrate the presence of said disease. In all fairness to the defendant, the proofs indicate that if the bees were

not brought in on combs, used hives or other used apiary appliances, the possibility of disease would be lessened but would not be completely obviated. Apparently, the disease can only be found after the diseased bee has  *  *  *  its young.  *  *  *

"From the above testimony it would indicate that even though there are no scientific means at the present time to determine whether or not bees are affected, there are still some means in which the disease can be found and that after an inspection of the beehive as testified to by Mr. Himbleton, it could be determined if the disease is present or if the bees in the particular hive were free from disease. The statute does not exempt bees which are free from the disease from being transported across the State line into Michigan, but provides that all bees, whether they are healthy or not and when shipped in used apiary appliances, combs or used hives shall be destroyed without any inspection whatsoever.  *  *  *

"This court is of the opinion that the act is also unconstitutional in that it provides: for the summary seizure and destruction of bees even though the bees may be completely healthy, and without a hearing or notice of any kind to the party owning said bees and without any inspection to determine the condition of their health."

Plaintiff produced Seymour E. Bailey, State apiarist of Ohio, who testified:

"I would say it is not possible by an inspection of a hive immediately prior to the hives being moved across the State boundary to determine absolutely the presence or absence of disease. You cannot be positive.  *  *  *

"The only means we have, or the only practical means of determining whether a colony is infected with this disease organism that causes American foul brood, is the visible evidence of dead or diseased brood. If it was possible to examine honey from the hive you might microscopically see the

spore organism, but that would be almost a very long chance that you would get hold of the honey that had it, or it would be very impractical, impossible I would say almost. As far as I am concerned, the only practical inspection and the only recognized regular inspection for visible evidence of diseased organism, of diseased bees, is the one that is done at the hive. This visible evidence is the disease organism which attacks the brood stage of the honey bee, and that is in the brood comb or in the cells where the queen has laid the eggs, and the organism kills the larva and it has very visible evidence of certain characteristics so that a person who is familiar with that can, by examination of that brood and seeing those dead brood, determine that it is what the cause is or what the disease is. * * *

"The only known means of destroying the spore form of the disease prior to shipment across State lines is by burning the colony of bees. * * *

"Foul brood is caused by an organism known as *bacillus larvae* which is a spore-forming bacteria. It kills the larva and pupa stage of the honey bee and gradually spreads through the brood nest once infection is in the colony, with the result that if enough of the brood is infected, it dies. There is no replacement of the adult bees and the colony eventually dies or passes out of the picture after the adult bees die of old age. To a certain extent every State in the union where they have bees is engaged officially in an effort to stamp out the disease. I would say it is a disease or infection that is very dangerous to the bee industry."

Donald M. Barrett, a witness in behalf of defendant, testified as follows:

"I am the State apiarist which is a position in the Michigan department of agriculture. I have held that position since 1931 with the exception of 4 years. I have charge of the enforcement of the apiary law which regulates the keeping of bees within the State of Michigan mainly insofar as disease

eradication is concerned. I have been in the bee-keeping business prior to the First World War. I am familiar with the characteristics and nature of the disease called foul brood. That is a disease which results in the death of broods of the bees, the young brood and thereby depletes the colony strength and sooner or later the colony passes out. In past years it has been somewhat prevalent in the State of Michigan. Back in 1927 when the work was started in Michigan on a Statewide scale the disease ran all the way from 15, 20, 30 and 40% and in some counties as high as 60% and a little better. One of the most prevalent ways in which the disease known as foul brood is transmitted from infected swarms to those that are not infected is one colony robbing the other. Another way is the interchange of diseased equipment or the placing of diseased equipment on healthy equipment which is often done by beekeepers who are not familiar with the disease or may be careless in their methods. Foul brood is transmitted from infected to uninfected swarms through the honey, the spores in the honey or any parts of the equipment that the colony may be in if it is an infected hive. I am not a scientific man but from my knowledge American foul brood has what is known as the bacterial stage and spore stage and these spores can live for years. In fact, a colony that has died of American foul brood, the dead hive can be placed maybe in some granary or attic, including the comb, and it may be there for years, and then if it is brought out and put in circulation again and healthy bees are put on this hive, it isn't but a short time the disease breaks out again in active form. The honey is one of the carriers of the disease. I am not a scientific man, but from the knowledge I have been able to glean from those that have more scientific training it is possible to detect the disease in the honey in the positive stage but if they get a negative test they can't say definitely whether it is there or not. And I might add that that isn't very

practical either. It would be practically impractical in this particular case."

Other witnesses were sworn and testified, both for plaintiff and defendant, and in general their testimony was in accord with the 2 State apiarists. We have in mind that the statute in question does not prevent the importation of bees and honey, but does prevent their importation on combs, in used hives, or in used equipment. We also have in mind that where the exercise of police power is applicable, the provision of the Constitution declaring that property shall not be taken without due process of law* is inapplicable, see *Ex parte Elam,* 6 Cal App 233 (91 P 811).

It is a generally accepted rule that a law enacted by the State to prevent the spread of contagious or infectious diseases among animals is a valid exercise of police power, see *Lawton* v. *Steele,* 152 US 133 (14 S Ct 499, 38 L ed 385). It was there said (p 136):

" 'The police power' * * * is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. Under this power it has been held that the State may order * * * the slaughter of diseased cattle."

Moreover, the right of properly constituted public authorities to destroy property deemed likely to spread disease is well established, see *Miller* v. *Horton,* 152 Mass 540 (26 NE 100, 10 LRA 116, 23 Am St Rep 850).

In *Train* v. *Boston Disinfecting Company,* 144 Mass 523 (11 NE 929, 59 Am Rep 113), the board of health of the city of Boston, by authority of a State law, adopted a regulation requiring that all rags

---

* See Const 1908, art 2, § 16.—Reporter.

entering the city of Boston from a foreign port be disinfected. The court in an opinion stated:

"Quarantine laws are a familiar exercise of the police power of a State. Their enactment is within its lawful province, and the making of regulations for their enforcement has always been entrusted to subordinate boards. Even if it be conceded, as it has been often contended, that whenever congress shall undertake to provide a general system of quarantine, or shall confide the execution of such a system to a national board of health, or to local boards, as may be found expedient, all State laws will be abrogated, at least so far as the 2 are inconsistent,—until this is done, the laws of the State are valid. *Morgan's Steamship Co.* v. *Louisiana Board of Health,* 118 US 455 (6 S Ct 1114, 30 L ed 237). The board of health is invested by the legislature with the power to make regulations necessary for the health and safety of the inhabitants, extending to all persons, goods, and effects arriving in vessels; it may determine that certain articles, on account of their liability to convey infection and the impossibility of ascertaining their history and where they have been originally collected, shall always be subjected to disinfection, at least externally in the bales in which they are imported, and that such a precaution is necessary before they are delivered to the importers for distribution among the inhabitants. This is a reasonable regulation, made under the police power of the State, which the board is executing."

It clearly appears that inspection of bees and honey involves a different problem than the inspection of large animals. The act in question does not bar the importation of bees and honey, but bars their importation in combs, and in used hives and equipment.

In our opinion the State, in the exercise of its police power, has the right to regulate the manner by which bees may be imported into Michigan. The

requirements under the act are in the interests of public health, and as such are within the constitutional provisions. The decree of the trial court is reversed and the injunction heretofore issued is dissolved. No costs, as the construction of a public act is involved.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.