## GRAYSON v. BOARD OF ACCOUNTANCY

1. Constitutional Law—Deprivation of Property—Due Process—Police Power.

Constitutional provisions declaring that property shall not be taken without due process of law are inapplicable where the exercise of the police power is applicable (US Const, Ams 5, 14; Const 1963, art 1, § 17).

2. Licenses—Accountants—Police Power.

Regulation of the methods and procedures in the certification of a certified public accountant is within the legislature's police power.

3. Licenses — Accountants — Examination — Nondisclosure — Constitutional Law.

Statutory provision prohibiting disclosing the names and addresses of applicants for the certified public accountant examination promotes the general welfare because of the loss of reputation and the prejudicial effect on job opportunities which would result from disclosure for those applicants who failed the examination (MCLA 1970 Cum Supp § 338.503).

4. Constitutional Law—Police Power—Public Protection.

An exercise of the police power is sustainable if it protects any substantial part of the public.

5. Constitutional Law—Equal Protection.

A state's making a classification does not, in and of itself, mean that a person has been denied the equal protection of the law (US Const, Am 14; Const 1963, art 1, § 2).

---

References for Points in Headnotes

[1, 4, 8, 9]  16 Am Jur 2d, Constitutional Law § 313 *et seq.*
[2, 3, 10, 14, 15]  1 Am Jur 2d, Accountants §§ 2–8.
[5–7, 10]  16 Am Jur 2d, Constitutional Law §§ 485–493.
[9]  16 Am Jur 2d, Constitutional Law § 172.
[11, 13]  16 Am Jur 2d, Constitutional Law §§ 137–143.
[12, 14, 15]  45 Am Jur, Records and Recording Laws § 23.

6. CONSTITUTIONAL LAW—EQUAL PROTECTION—POWER TO CLASSIFY—
DISCRETION.

The constitutional guarantees of equal protection do not take
from the state the power to classify in the adoption of police
laws but admit of the exercise of wide discretion in classifica-
tion and avoid what is done only when it is without any
reasonable basis and, therefore, is purely arbitrary (US Const,
Am 14; Const 1963, art 1, § 2).

7. CONSTITUTIONAL LAW—EQUAL PROTECTION—CLASSIFICATION—REA-
SONABLE BASIS.

A classification, made by the state in the exercise of its police
power, which has some reasonable basis does not offend against
the constitutional guarantees of equal protection merely be-
cause the classification was not made with mathematical nicety
or because in practice it results in some inequality (US Const,
Am 14; Const 1963, art 1, § 2).

8. CONSTITUTIONAL LAW — EQUAL PROTECTION — CLASSIFICATION —
BASIS — CONSTRUCTION.

Any state of facts which reasonably can be conceived that would
sustain a questioned classification, made by the state in exer-
cise of its police powers, will be assumed to have existed at
the time the law containing the classification was enacted.

9. CONSTITUTIONAL LAW — EQUAL PROTECTION — CLASSIFICATION —
REASONABLE BASIS — BURDEN OF PROOF.

One who assails a classification made by the state in the exercise
of its police power must carry the burden of showing that it
does not rest upon any reasonable basis, but is essentially
arbitrary (US Const, Am 14; Const 1963, art 1, § 1).

10. LICENSES — ACCOUNTANTS — EXAMINATION — NONDISCLOSURE —
EQUAL PROTECTION.

A statute prohibiting disclosure of the names and addresses of
applicants for the certified public accountant examination is
not a denial of equal protection of the laws on the ground that
it is an essentially arbitrary classification even though no other
regulated profession is governed by a nondisclosure statute
because the examination, by its high failure rate, is set apart
from examinations of other regulated professions (US Const,
Am 14; Const 1963, art 1, § 2).

11. Constitutional Law — Statutes — Constitutionality — Construction.

The constitutionality of a statute will be supported by all possible presumptions not clearly inconsistent with the language and subject matter of the statute.

12. Records—Financial Records—Definition.

Financial records are those records from which audit reports, financial reports, and statements are made up and general and subsidiary ledgers within which summary and detail entries are made from documents, listings, and recapitulations; payroll records, expense vouchers, purchase orders, receipts vouchers, warrants, applications for licensure and the like are documents, not financial records, and are not available to the public.

13. Statutes—Construction of Statutes—Administrative Interpretation.

The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.

14. Records—Financial Records—Accountants' Examination—Application.

An application for the certified public accountant examination which, when it is received with the application fee, is machine-stamped with the amount received and date received and used to prepare a "recap sheet," which does not show the name or address of the applicant, is not a financial record, because no financial record exists until the recap sheet is validated and because the public's right to information and the smooth functioning of the government is best served by construing the words "financial records" to require more than a receipt or document (Const 1963, art 9, § 23).

15. Licenses — Accountants — Examination — Nondisclosure — Parent Department.

Stautory provision prohibiting disclosure of the names and addresses of applicants for the certified public accountants' examination by the Board of Accountancy is applicable to the Department of Licensing and Regulation, the supervising department of the board; if the parent department was not bound by the statute, the legislative purpose of protecting an applicant's privacy would be thwarted (MCLA § 16.103; MCLA 1970 Cum Supp § 338.503).

Appeal from Wayne, Joseph G. Rashid, J.  Submitted Division 1 June 12, 1970, at Detroit.  (Docket No. 7,855.)  Decided October 1, 1970.

Complaint by Stanford J. Grayson against the State Board of Accountancy and the Department of Licensing and Regulation to compel disclosure of names and addresses of candidates for the certified public accountants' examination.  Judgment for defendants.  Plaintiff appeals.  Affirmed.

*Shere & Klein,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Maurice M. Moule* and *Michael D. Lewis,* Assistant Attorneys General, for defendants.

Before: DANHOF, P. J., and V. J. BRENNAN and J. J. KELLEY, JR.,* JJ.

V. J. BRENNAN, J.  Plaintiff is engaged in the business of providing a review course for candidates for the C.P.A. exam.  He has on a number of occasions attempted to secure from the defendants the names and addresses of candidates for the C.P.A. exam in order that he might send them promotional materials.  Defendants have denied the plaintiff the requested names and addresses, relying upon PA 1967, No 306, § 1 which amends CL 1948, § 338.503 (Stat Ann 1970 Cum Supp § 18.3); the statute provides:

"Any application, document or other information filed by or concerning an applicant shall not be disclosed by the board to anyone without the prior per-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

mission of the applicant to do so, except that nothing herein shall prevent the board from making public announcement of the names of persons receiving certificates under this act."

Plaintiff brought a complaint in Wayne County Circuit Court requesting that the defendants be made to disclose the names and addresses of the candidates. This was denied by the Wayne County Circuit Court, and the complaint was dismissed. Upon rehearing, defendants' motion for summary judgment was granted. From this judgment, plaintiff appeals.

Plaintiff raises four issues worthy of discussion.

1. *Due process*

Plaintiff's first contention is that PA 1967, No 306, § 1, denies him due process of law in contravention of the Fifth and Fourteenth Amendments of the Federal Constitution and of article 1, § 17, of the Michigan Constitution of 1963. He contends that his business is "property" and cannot be taken without due process of law. He further contends that the nondisclosure provision is not a valid exercise of the police power, because it has no substantial relation to the public safety, health, morals, or general welfare. We do not agree.

In *People* v. *Raub* (1967), 9 Mich App 114, 118, this Court said:

"It is fundamental that 'where the exercise of the police power is applicable, the provision of the Constitution declaring that property shall not be taken without due process of law is inapplicable.' *Wyant* v. *Director of Agriculture* (1954), 340 Mich 602, 608."

Since there can be little question that it is within the legislature's police power to regulate the methods and procedures in the certification of a C.P.A.,

the problem resolves itself into the question of whether this statute does in fact promote health, safety, morals, or general welfare.  Evidence was introduced that PA 1967, No 306, § 1 was passed at the instigation of the Board of Accountancy for the purpose of saving applicants from the embarrassment of having their failures made public.  The loss of reputation and the prejudicial effect on job opportunities for the applicant which would flow from a disclosure are detrimental enough to the general welfare to justify the regulation in question.

The fact that this statute does not benefit all of the public is not fatal.  An exercise of the police power is sustainable if it protects "any substantial part of the public."  *Cady* v. *City of Detroit* (1939), 289 Mich 499, 504, 505.  In this case the evidence shows that approximately 1500 people apply for the C.P.A. exam each year.  When this number becomes multiplied over the years, the result is that the benefits of the statute will accrue to a substantial portion of society.  This was a valid exercise of the police power.

### 2. *Equal Protection*

Plaintiff contends that the statute in question violates the equal protection clauses of the Fourteenth Amendment to the Federal Constitution and article 1, § 2 of the Michigan Constitution of 1963.  Plaintiff says that the statute makes an invidious discrimination against him because no other nondisclosure statutes exist in Michigan with respect to any other regulated professions or occupations.

The mere fact that a state makes a classification does not in and of itself mean that a person has been denied the equal protection of the law.  The case of *Lindsley* v. *Natural Carbonic Gas Co.* (1911), 220 US 61, 78 (31 S Ct 337, 55 L Ed 369), sets forth the standards for classification:

"1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary.   2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.   4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

In this case the facts show that on the average over 80 per cent of the candidates fail the C.P.A. exam.   Such a large number of "flunks" set the C.P.A. exam apart from examinations of the other regulated professions in the state and call for the special protection of the statute.   Where close to 1200 of the 1500 applicants are unsuccessful, the amount of embarrassment and loss of reputation generated thereby permits of different treatment than is accorded other professions.   In light of the broad scope of discretion that the legislature has when making classifications, this statute cannot be said to be "essentially arbitrary."

### 3. *Financial Records*

The third assignment of error rests on article 9, § 23 of the Michigan Constitution of 1963, which provides:

"All financial records, accountings, audit reports and other reports of public moneys shall be public records and open to inspection.   A statement of all revenues and expenditures of public moneys shall be

published and distributed annually, as provided by law."

Plaintiff says that the application forms become financial records when they are stamped with the amount paid and the date. If this is true, PA 1967, No 306, § 1 is unconstitutional.

In order to resolve this issue, one must look to the mechanical procedures attendant to applying for a C.P.A. exam. When an application, together with the application fee of $25, is received by the Department of Licensing and Regulation, a cashier counts the money and inserts each individual application into a machine which prints the amount of money received and the date of receipt upon it in the space provided thereon. The applications are then sorted and a "validation recap sheet" is prepared. The names and addresses do not appear on the "recap sheet", which is placed in a receipt journal by an accountant. Finally, the applications are microfilmed by the Department of Licensing and Regulation before they are turned over to the Board of Accountancy.

It should be noted at the outset that the state legislature is the repository of all legislative power, subject only to limitations and restictions imposed by the state and Federal constitutions. The constitutionality of a statute will be supported by all possible presumptions not clearly inconsistent with the language and subject matter. *Oakland County Taxpayers' League* v. *Oakland County Supervisors* (1959), 355 Mich 305.

The plaintiff would have this Court believe that the mere imprinting on the application by the cashier is sufficient to convert the application into a "financial record" within the purview of article 9, § 23 of the Michigan Constitution. Although there has been no judicial pronouncement as to the precise meaning of the words "financial records," we are aided by the construction given to those words by the accounting division of Michigan's Department of Adminis-

tration. The chief of the accounting division, D. L. Powers, stated:

" * * * financial records are those records from which the above statements and reports [audit reports, financial reports, and statements] are made up and include general and subsidiary ledgers within which summary and detail entries are made from documents, listings, and recapitulations. That documents such as payrolls, expense vouchers, purchase orders, receipts vouchers, warrants, applications for licensure and the like are not financial records and are not available to the public."

Likewise, the deputy chief, Mr. McDaniels, stated that no financial record exists until the recap sheet is validated. Such recap sheet does not contain the names and addresses of the applicants. The interpretation of these words by the department of administration is entitled to much weight. In *Magreta* v. *Ambassador Steel Co.* (1968), 380 Mich 513, 519, the Court laid down the following proposition:

" 'The construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.' "

In view of the fact that there has been no construction of this phrase other than the administrative construction, this Court feels constrained to hold that the imprinted applications are documents and not financial records.

But there is a further reason which compels this conclusion. The manifest purpose of article 9, § 23 is to allow the public to keep their finger on the pulse of government spending. The most expeditious way of so doing is to give the public access to summaries, balance sheets, and other such compilations which map out and correlate a myriad of financial transactions into a meaningful account. It strains one's

credulity to think that the framers of the Constitution meant to allow the public to inspect every receipt, every application for licensure, and every writing evidencing a receipt or expenditure.  It is totally unnecessary to give such authority to the public to achieve the purpose aforementioned and such authority could easily serve as a tool to harass governmental agencies by unreasonable demands for great volumes of individual documents.  We hold that the public right to information given by article 9, § 23 is best promoted, and the smooth functioning of the government best protected, by construing the words "financial records" to require more than a receipt or document, such as the imprinted applications here.

4. *Application of PA 1967, No 306, § 1, to Department of Licensing and Regulation*

The final argument posed by the plaintiff is that the statute in question provides for nondisclosure only "by the board" and that it does not apply to the Department of Licensing and Regulation, which has a microfilm copy of all receipted applications. The defendants answer by saying that the Board of Accountancy was transferred to the Department of Licensing and Regulation by a type I transfer under the Executive Organization Act, MCLA § 16.103 (Stat Ann 1969 Rev § 3.29[3]), and thus the Department of Licensing and Regulation, the supervising department for the board, should be required to abide by the nondisclosure provision.

Although there have been no cases which have discussed the effect of a type I transfer upon the applicability of prohibitions directed toward a board on the principal department, the only way that the nondisclosure provisions can be implemented is by construing the language of PA 1967, No 306, § 1 as

also applying to the parent department. If the information which the legislature has determined should not be disclosed is made available by the mere fact that it is in the hands of the parent department, the legislative purpose would be thwarted. The Court held in *Benjamin* v. *Huntington Woods* (1957), 349 Mich 545, 555 that:

"We seek a reasonable construction of statutes in light of the purposes sought to be accomplished."

The only way to accomplish the legislative purpose of protecting the candidates' privacy is to hold that the prohibition of the statute applies also to the Department of Licensing and Regulation.

For the foregoing reasons we find that none of plaintiff's contentions require reversal and the judgment of the circuit court is therefore affirmed.

Affirmed.

All concurred.