VAN SLOOTEN v LARSEN

Docket No. 77-1991. Submitted February 9, 1978, at Lansing.—De-.
cided October 17, 1978. Limited leave to appeal granted, 405
Mich 824.

    H. John Van Slooten brought an action in Kalkaska Circuit
Court against Myrtle Larsen and other defendants to quiet title
to certain subsurface oil and gas interests. In 1943 Nellie Gill,
owner of 40 acres, conveyed the parcel, excepting and reserving
to herself and her heirs all of the oil and mineral rights. The
deed conveyance was recorded in 1945. One of the defendants
recorded an instrument affecting an interest in the rights
reserved to the Gill heirs in 1970, other defendants recorded
later. Plaintiff is the successor in interest of the grantee of the
deed. Nellie Gill is now deceased and the defendants are her
heirs. William R. Peterson, J., ruled that the dormant minerals
act is unconstitutional as applied to these defendants because it
deprived the defendants of property without due process of law
and impaired the obligation of defendants' contract with plain-
tiff. Judgment for defendants. Plaintiff appeals. *Held:*

    1. Oil and gas interests owned by a nonsurface owner may be
abandoned if no specified activity occurs within a 20-year
period. Defendants failed to file a notice of a claim of interest
within 20 years; therefore, title vests in plaintiff as surface
owner of the land.

    2. The clear and valid public purpose of the dormant miner-
als act is to encourage exploration for, and extraction of,
needed oil and gas.

    3. The dormant minerals act is not arbitrary or capricious

REFERENCES FOR POINTS IN HEADNOTES
[1, 7, 8] 38 Am Jur 2d, Gas and Oil §§ 54, 208-213.
  54 Am Jur 2d, Mines and Minerals §§ 119, 147.
[2] 54 Am Jur 2d, Mines and Minerals §§ 103, 108-110.
[3, 4, 9] 16 Am Jur 2d, Constitutional Law §§ 292, 296, 301, 368-370.
[5, 6] 16 Am Jur 2d, Constitutional Law §§ 281-283, 318.
[6] 54 Am Jur 2d, Mines and Minerals §§ 2, 20, 31, 167.
[10] 16 Am Jur 2d, Constitutional Law §§ 434, 450-452.
[11-13] 16 Am Jur 2d, Constitutional Law §§ 298-301.
[14] 16 Am Jur 2d, Constitutional Law § 495.

because there is a rational connection between an oil and gas owner's inaction and the presumption of abandonment.

4. Enforcement of the dormant minerals act is a valid exercise of police power.

5. The dormant minerals act does not unconstitutionally impair the obligations of contract.

Reversed and remanded.

1. MINES AND MINERALS—DORMANT MINERALS ACT—OIL AND GAS INTERESTS—SUBSURFACE OWNERS—ABANDONMENT—PRESERVATION OF INTERESTS—STATUTES.

The dormant minerals act provides that when the ownership of subsurface oil and gas interests is severed from the ownership of the surface, the owner of oil and gas rights must do some act, enumerated in the statute, to indicate ownership or the oil and gas interests are deemed abandoned and become the property of the surface owner (MCL 554.291 *et seq.;* MSA 26.1163[1] *et seq.).*

2. MINES AND MINERALS—SUBSURFACE INTERESTS—SUBSURFACE OWNERS—SEVERANCE OF INTERESTS—RESERVATION IN DEED.

The ownership of subsurface mineral interests may be severed from ownership of the surface by a reservation in a deed.

3. CONSTITUTIONAL LAW—DEPRIVATION OF PROPERTY—DUE PROCESS—POLICE POWER.

The provision of the constitution declaring that property shall not be taken without due process of law is inapplicable where there is a valid exercise of police power.

4. CONSTITUTIONAL LAW—POLICE POWER—COURTS—STATUTES—EVALUATION OF STATUTES—FLEXIBILITY—CHANGE OF SOCIAL CONDITIONS.

Courts have remained flexible in evaluating various statutes in the light of evolving social conditions when determining what constitutes a valid exercise of police power; they have consistently and wisely declined to set any fixed limitations upon subjects calling for the exercise of this power because police power is elastic and is exercised from time to time as varying social conditions demand correction.

5. CONSTITUTIONAL LAW—POLICE POWER—LEGISLATIVE JUDGMENT—PUBLIC PURPOSE.

Courts give great deference to the legislative judgment in passing on the validity of police power legislation; generally, there is a two-step inquiry: (1) whether there is a valid public purpose,

and if so, (2) is there a reasonable relationship between the remedy adopted and the public purpose.

6. MINES AND MINERALS—DORMANT MINERALS ACT—OIL AND GAS—PUBLIC PURPOSE—EXPLORATION AND EXTRACTION.

The clear and valid public purpose of the dormant minerals act is to encourage exploration for, and extraction of, needed oil and gas.

7. MINES AND MINERALS—DORMANT MINERALS ACT—OIL AND GAS—SUBSURFACE OWNERS—PRESERVATION OF INTERESTS—ABANDONMENT—PRESUMPTIONS.

The dormant minerals act creates a rebuttable presumption that the owner of subsurface rights has abandoned them if he or she has done nothing to indicate ownership; the presumption is rebutted by the owner doing any one of a number of acts which would indicate ownership sometime within a twenty-year period; the requirements of the act place a minimal burden on the owner of the oil and gas rights to do something to indicate ownership and if the owner fails to carry that minimal burden, the law deems his rights abandoned; in essence, the act creates a statutory conclusive presumption of abandonment which may not be rebutted by other evidence.

8. MINES AND MINERALS—DORMANT MINERALS ACT—OIL AND GAS—SUBSURFACE OWNERS—ABANDONMENT OF RIGHTS—STATUTES—PRESUMPTIONS—APPEAL AND ERROR—ARBITRARY OR CAPRICIOUS STANDARD.

Conclusive presumptions established by statute are reviewed under the arbitrary or capricious standard; the conclusive presumption that a subsurface owner of oil and gas rights has abandoned those rights by failing to indicate ownership within twenty years, as established by the dormant minerals act, is not arbitrary or capricious because there is a rational connection between an oil and gas owner's inaction and the presumption of abandonment.

9. MINES AND MINERALS—DORMANT MINERALS ACT—ENFORCEMENT—POLICE POWER.

Enforcement of the dormant minerals act is a valid exercise of police power.

10. CONSTITUTIONAL LAW—CONTRACTS—IMPAIRMENT OF CONTRACTUAL OBLIGATIONS—BALANCING TEST.

The constitutional limitation on a state's power to impair the obligation of contract is not to be read with mathematical exactness since it is not every modification of a contractual

promise that impairs the obligation of contract; in each case where there is an alleged impairment of the obligation of contract, the state's economic interests and sovereign right to protect the general welfare of the people must be balanced against the constitutional limitation.

11. CONSTITUTIONAL LAW—POLICE POWER—STATE'S ECONOMIC INTERESTS—INTERFERENCE WITH CONTRACTS.

The economic interests of a state may justify the exercise of its continuing and dominant protective power, notwithstanding interference with contracts.

12. CONSTITUTIONAL LAW—POLICE POWER—CONTRACTS.

A state enactment is not prohibited where there is a valid exercise of a state's police power which only incidentally affects an existing contract.

13. CONSTITUTIONAL LAW—DORMANT MINERALS ACT—CONTRACTS—IMPAIRMENT OF CONTRACTS.

The dormant minerals act does not unconstitutionally impair the obligations of contract.

14. CONSTITUTIONAL LAW—DORMANT MINERALS ACT—EQUAL PROTECTION.

The equal protection clause does not require the Legislature to choose between addressing every aspect of a problem or not addressing the problem at all; the fact that the dormant minerals act only applies to high priority gas and oil and not other minerals is not a violation of equal protection.

*Thompson, Zirnhelt & Bowron* (by *Peter J. Zirnhelt* and *Kenneth T. Bovee),* for plaintiff.

*Dreyer & Braeuninger,* for defendants.

Before: N. J. KAUFMAN, P.J., and D. E. HOLBROOK, JR. and D. F. WALSH, JJ.

D. E. HOLBROOK, JR., J. Plaintiff appeals from the trial court's ruling that the so-called "dormant minerals act", MCL 554.291 *et seq.;* MSA 26.1163(1) *et seq.,* violated both the Federal and state constitutions by depriving defendants of property without due process of law. Further the

trial court held that the act impaired the obligation of defendants' contract with plaintiff contrary to art I, § 10 of the Michigan Constitution of 1963 and art I, § 10 of the United States Constitution.

The case was submitted on stipulated facts and the only issue was the constitutionality of the dormant minerals act. In 1943 Nellie Gill, the owner of 40 acres of land in Kalkaska County, conveyed the parcel "excepting and reserving to herself and her heirs all of the oil and mineral rights * * * ". The deed of conveyance was recorded on August 7, 1945. Plaintiff, H. John Van Slooten, is the successor in interest of the grantee of the deed. Ms. Gill is now deceased and the defendants are her heirs.

On June 29, 1970, one of the defendants recorded an oil and gas lease. This was the first recorded instrument affecting or asserting an interest in any of the rights reserved to heirs in the Gill deed. After the recording of this initial lease, all of the defendants or their ancestors executed oil and gas leases.

It is undisputed that neither Ms. Gill nor her heirs have recorded any written notice with the county register of deeds nor have any drilling permits been issued in the 20 year period following the recordation of the Gill deed on August 7, 1945, or in the three-year period following September 6, 1963.

The relevance of the three- and 20-year periods can be seen in the statutory sections, MCL 554.291 and 554.292; MSA 26.1163(1) and 26.1163(2).

"554.291 Oil or gas interest in land; abandonment; claim of interest; vesting in surface owner.

"Sec. 1. Any interest in oil or gas in any land owned by any person other than the owner of the surface, which has not been sold, leased, mortgaged or transfer-

red by instrument recorded in the register of deeds office for the county where such interest is located for a period of 20 years shall, in the absence of the issuance of a drilling permit as to such interest or the actual production or withdrawal of oil or gas from said lands, or from lands covered by a lease to which such interest is subject, or from lands pooled, unitized or included in unit operations therewith, or the use of such interest in underground gas storage operations, during such period of 20 years, be deemed abandoned, unless the owner thereof shall, within 3 years after the effective date of this act or within 20 years after the last sale, lease, mortgage or transfer of record of such interest or within 20 years after the last issuance of a drilling permit as to such interest or actual production or withdrawal of oil or gas, from said lands, or from lands covered by a lease to which such interest is subject, or from lands pooled, unitized, or included in unit operations therewith, or the use of such interest in underground gas storage operations, whichever is later, record a claim of interest as hereinafter provided. Any interest in oil or gas deemed abandoned as herein provided shall vest as of the date of such abandonment in the owner or owners of the surface in keeping with the character of the surface ownership.

"Drilling permit. The phrase 'drilling permit' shall mean a permit to drill an oil or gas well issued by the conservation department or its successor.

"554.292 Preservation of oil or gas interest; recording of interest notice claimed

"Sec. 2. Any interest in oil or gas referred to in this act may be preserved by the recording within the period specified in this act a written notice in the register of deeds office for the county where such interest is located, which notice shall be verified by oath, describe the land and the nature of the interest claimed, give the name and address of the person or persons claiming the interest, and state that such person or persons desire to preserve the interest and do not intend to abandon same: Provided, however, That any person holding such interests for use in underground gas storage operations may preserve his inter-

ests, and the interests of any lessor thereof, by recording a single such written notice, defining the boundaries of the underground gas storage field or pool, and the formations included therein, within which said interests are located, without the necessity of describing each separate interest claim therein by said person. The recording of such notice shall operate to preserve such interest from the operation of this act for a period of 20 years thereafter when, if the nondormant character of the interest has not been evidenced by sale, lease, mortgage or transfer by instrument recorded in the register of deeds office for the county where such interest is located, a drilling permit issued, oil or gas actually produced or withdrawn from said lands, or from lands covered by a lease to which such interest is subject, or from lands pooled, unitized, or included in unit operations therewith, or the use of such interest in underground gas storage operations, or a like notice filed, such interest shall be deemed abandoned. In the absence of prior abandonment, such interests may be preserved indefinitely from the operation of this act by the filing of the notices as herein provided or the performance of any of the acts specified herein evidencing nondormancy of the interest within each succeeding 20 year period.

"Nonapplication of act. This act shall not apply to any interest in oil or gas owned by any governmental body or agency thereof." 1963 PA 42, § 2, eff. Sept. 6.

Essentially the act provides that when the ownership of subsurface oil and gas interests is severed from the ownership of the surface, the owner of oil and gas rights must do some act, enumerated in the statute, to indicate ownership or the oil and gas interests are deemed abandoned and become the property of the surface owner. The trial court found this legislative scheme to be unconstitutional since it deprived the defendants of property without due process of law and impaired the obligations of contract between plaintiff and defendant. On appeal, defendants also claim

the statute deprives them of equal protection of the law.

We begin by noting that there is no question that ownership of subsurface mineral interests may be severed from ownership of the surface by a reservation in a deed. *Rathbun v Michigan,* 284 Mich 521, 534; 280 NW2d 35 (1938). That is the situation in the instant case.

While defendants and the trial court have focused on the issue of whether the statute deprives defendants of property without due process of law, Michigan courts have held that where there is a valid exercise of the police power, the provision of the constitution declaring that property shall not be taken without due process of law is inapplicable. *Wyant v Director of Agriculture,* 340 Mich 602, 608; 66 NW2d 240 (1954), *Grayson v Board of Accountancy,* 27 Mich App 26, 30; 183 NW2d 424 (1970), *People v Raub,* 9 Mich App 114, 118; 155 NW2d 878 (1967). Therefore if the dormant minerals act is a valid exercise of police power, defendants have not been deprived of property without due process of law.

In determining what constitutes a valid exercise of police power, courts have remained flexible in evaluating various statutes in light of evolving social conditions. In *Clements v McCabe,* 210 Mich 207, 215; 177 NW 722 (1920), the Michigan Supreme Court stated,

"The governmental authority known as 'police power' is concededly an inherent attribute of State sovereignty. * * * As generally understood it operates in a conceded sphere relating to public safety, order and morals for the protection of health, person and property, which is never questioned; but with changing conditions and requirements of our modern civilization, increasing regulatory and restrictive legislation has expanded its

application to new subjects and demands presenting a debatable sphere where compulsory control borders the line of claimed constitutional rights and private freedom of action."

In *People v Raub, supra,* at 119, this Court commented on the exercise of the police power,

"Courts have consistently and wisely declined to set any fixed limitations upon subjects calling for the exercise of this power. It is elastic and is exercised from time to time as varying social conditions demand correction."

In passing on the validity of "police power" legislation, courts give great deference to the legislative judgment. The Supreme Court stated in *Carolene Products Co v Thomson,* 276 Mich 172, 178; 267 NW 608 (1936),

"The primary determination of public need and character of remedy in the exercise of the police power is in the legislature. Unless the remedy is palpably unreasonable and arbitrary so as needlessly to invade property or personal rights as protected by the Constitution, the act must be sustained. The presumption favors validity and, if the relation between the statute and the public welfare is debatable, the legislative judgment must be accepted."

There is a two-step inquiry: (1) whether there is a valid public purpose, and if so, (2) is there a reasonable relationship between the remedy adopted and the public purpose?

*Public Purpose.* The preamble of the act[1] indi-

---

[1] "AN ACT to provide for the termination of dormant oil and gas interests in land owned by persons other than the owners of the surface and for the vesting of title to same in the surface owners in the absence of the filing of a notice of claim of interest within a specified period of time."

cates what the act does but does not suggest a purpose. In *Mask v Shell Oil Co,* 77 Mich App 25; 257 NW2d 256 (1977), another panel recently construed the statute but they did not examine the statutory purpose nor did they pass on the constitutionality of the legislation.

We believe the clear purpose of the statute is to encourage development of valuable oil and gas reserves. The need for developing existing energy sources and creating new sources is even more crucial today than when the act was passed in 1963.

Because the surface owner can never acquire any of the severed oil or gas by adverse possession,[2] legislation was required to prevent unknown and widely scattered heirs from preventing development of subsurface resources by inaction. The formidable task facing the surface owner in locating unknown heirs to valuable oil and gas deposits is outlined in Street, *Need for Legislation to Eliminate Dormant Royalty Interests,* Vol 42, No 3, Michigan Bar Journal, 49 (March 1963). At least five other states, Florida,[3] Illinois,[4] Indiana,[5] Nebraska[6] and Virginia,[7] have adopted similar legislation. In discussing the rule that prevents the surface owner from adversely possessing the subsurface rights after severance, treatise writers Williams and Meyers point out:

"While the rule appears to be sound enough from the

[2] *See generally,* 1 Williams and Meyers, Oil and Gas Law, Adverse Possession and Trespass, § 224.1, p 344.

[3] FSA § 704.05.

[4] Smith-Hurd Ill Ann Stat, § 30:197–30:198.

[5] Ind Code of 1971, § 32-5-11-1 to § 32-5-11-8.

[6] Rev Stat Neb 1943, § 57-228 to § 57-231.

[7] Va Code, § 55-154 to § 55-155. Held constitutional in *Love v Lynchburg National Bank & Trust Co,* 205 Va 860; 140 SE2d 650 (1965).

mineral owner's point of view, it can cause economic inconvenience to the public. Severed minerals cannot be developed until the owners consent to their development. The older the severance (and many go back to the 19th century), the greater the difficulty in locating the owners. The problem is further complicated if the severance was of small undivided mineral interests, as was common for speculation purposes in some areas in the 1920's. Present development of such areas depends upon obtaining the consent of nearly all the mineral owners, a task that could involve locating thousands of persons." 1 Williams & Meyers, Oil and Gas Law, Adverse Possession and Trespass, § 224.1, p —

Another commentator has analyzed the problem and has suggested legislative action.

"It is generally accepted to be sound policy for a new oil and gas producing state to facilitate the rapid development of its oil and gas resources. The most effective way such a policy can be implemented is to force the owners of severed oil and gas interest to produce or lose their rights. This policy precludes any attitude of protecting at all costs the owner of a severed oil and gas interest and requires an avowed judicial and legislative intention not to tie up the development of these resources for an indefinite period of time. Thus, in a new oil and gas producing state the public would best be served by allowing the severed oil and gas interest in addition to the surface ownership to enure to an adverse possessor of only the surface after the prescriptive or statutory period has expired." Silver, "Mines and Minerals-Oil and Gas-What Constitutes Adverse Possession of Severed Mineral Interest by Surface Possessor," 17 Ala L Rev 126, at 130 (1964). 1 Williams & Meyers, Oil & Gas Law, Adverse Possession and Trespass, § 224.1, fn 8.1, p 345.

It cannot be disputed that the public benefits from the development of oil and gas reserves. Likewise the public is harmed when unknown and

uninterested heirs are able to frustrate oil and gas development by their inaction. As noted earlier, courts give great deference to the Legislature in determining the public need. We conclude that the dormant minerals act has a clearly valid public purpose—to encourage exploration for, and extraction of, needed oil and gas.

*Relationship Between Remedy and Purpose.* It is true that the operation of the statute is not exactly like, though perhaps similar to, a statute of limitation, a recording act or marketable title acts. However, the fact that the Legislature has opted for a unique remedy for a difficult problem is not fatal.

There were several complex problems facing the Legislature in divising a solution. First there was an inherent problem of how to deal with subsurface oil and gas rights which are incapable of physical possession. Of course if the owners of those rights were extracting oil and gas or transferring their rights, there would be no difficulty in ascertaining ownership. The problem arose, however, when the owner or owners of the subsurface rights had done nothing to indicate ownership and this problem was particularly acute when the owners were unknown heirs of former owners.

Essentially the act creates a rebuttable presumption that the owner of the subsurface rights has abandoned them if he or she has done nothing to indicate ownership. The presumption is rebutted by the owner doing any one of a number of acts which would indicate ownership sometime within a 20-year period. The requirements of the act place a minimal burden on the owner of the oil and gas rights to do *something* to indicate ownership and if the owner fails to carry that minimal burden, the law deems his rights abandoned. In

essence, the act creates a statutory conclusive presumption of abandonment. Unlike a common-law presumption, which may not be "conclusive" and may be rebutted by testimony, *In re Mercure Estate,* 391 Mich 443, 448; 216 NW2d 914 (1974), a statutory conclusive presumption may not be rebutted by other evidence. *Pearo v Mackinac Island,* 307 Mich 290; 11 NW2d 893 (1943). Conclusive presumptions established by statute are reviewed under the "arbitrary or capricious" standard. *In re Mercure Estate, supra* at 448. We conclude that there is a rational connection between an oil and gas owner's inaction for 20 years and the presumption of abandonment, *People v Bankston,* 78 Mich App 733, 736; 261 NW2d 39 (1977), and that the presumption is not arbitrary or capricious.

We hold that the dormant minerals act is a valid exercise of the police power. By failing to comply with the minimal requirements of the statute, defendants have abandoned their rights.

Defendants raise two other issues with which we deal summarily. Specifically defendants argue the act unconstitutionally impairs the obligation of contract and that the act denies equal protection of the laws.

The United States Supreme Court has stated that the constitutional limitation on a state's power to impair the obligation of contract is not to be read with mathematical exactness and that "it is not every modification of a contractual promise that impairs the obligation of contract". *El Paso v Simmons,* 379 US 497, 506–507; 85 S Ct 577; 13 L Ed 2d 446 (1965), *reh den,* 380 US 926; 85 S Ct 879; 13 L Ed 2d 831 (1965), *Washtenaw Community College Education Ass'n v Board of Trustees of the Washtenaw Community College,* 50 Mich

App 467, 472; 213 NW2d 567 (1973), *Michigan Transportation Co v Secretary of State,* 41 Mich App 654, 663; 201 NW2d 83 (1972), *lv den,* 389 Mich 767 (1973). In each case where there is an alleged impairment of the obligation of contract, the state's economic interests and sovereign right to protect the general welfare of the people must be balanced against the constitutional limitation. *Washtenaw Ass'n, supra* at 472, citing *El Paso, supra* at 508. In another United States Supreme Court case, *Home Building & Loan Ass'n v Blaisdell,* 290 US 398, 437; 54 S Ct 231; 78 L Ed 413 (1934), the Court stated:

"The economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts."

See *Metropolitan Funeral System Ass'n v Commissioner of Insurance,* 331 Mich 185, 195; 49 NW2d 131 (1951), *Keefe v Oakland County Drain Commissioner,* 306 Mich 503, 512–513; 11 NW2d 220 (1943), *aff'd* 332 US 393; 64 S Ct 1072; 88 L Ed 1346 (1944).

In another case involving a challenge to a statute which allegedly impaired the obligation of contract, this Court stated:

"Where there is a valid exercise of the state's police power which only incidentally affects the existing contract then the state enactment is not prohibited."

*Brda v Chrysler Corp,* 50 Mich App 332, 335; 213 NW2d 295 (1973).

In applying the standards set forth in the above cases, we conclude that the dormant minerals act does not unconstitutionally impair the obligations of contract. We have already concluded that the

act represents a legislative judgment that encouraging oil and gas exploration is in the public welfare and that the act is a valid exercise of the state's police power. The statute does not prevent the defendants from enforcing any contract with the plaintiff, but rather requires defendants to indicate their continuing interest in the oil and gas rights by complying with the minor registration requirements of the statute. Because the act is a valid exercise of the police power which imposes only a minimal burden on defendants, the Legislature has not unconstitutionally impaired the obligation of contract.

Although the defendants did not raise their equal protection argument at trial court level, we address it briefly on appeal. Since the act does not involve any suspect classification, the proper standard of evaluation is the "rational basis" test. *Cruz v Chevrolet Grey Iron Division of General Motors Corp,* 398 Mich 117, 128–129; 247 NW2d 764 (1976), *Schigur v Secretary of State,* 73 Mich App 239; 251 NW2d 567 (1977). The defendants argue that the act denies equal protection because it applies only to gas and oil and not other minerals. We disagree. The Legislature has placed a high priority on development of oil and gas. Perhaps in the future the need for other minerals may be as great as the current need for oil and gas and at that time special legislation may be enacted. However, the equal protection clause does not require the Legislature to choose between addressing every aspect of a problem or not addressing the problem at all. *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 672; 232 NW2d 636 (1975). There is a rational basis between the legislative policy of encouraging oil and gas development and the statutory scheme adopted to carry

out that policy. Further the act treats all those similarly situated equally; all owners of severed oil and gas rights run the risk of abandoning their rights if they do not comply with the statutory requirements. Defendants have not been denied equal protection of the laws.

We hold the dormant minerals act, MCL 554.291 *et seq.;* MSA 26.1163(1) *et seq.,* to have a legitimate public purpose, to be a valid exercise of the police power and to be constitutional. In view of our disposition we need not address the other issue raised by plaintiff.

Reversed and remanded. No costs, constitutionality of a statute being involved.