# Syllabus

Chief Justice:

Bridget M. McCormack

Justices:

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

## SOLE v MICHIGAN ECONOMIC DEVELOPMENT CORPORATION

Docket No. 161598. Argued on application for leave to appeal December 8, 2021. Decided June 29, 2022.

David Sole brought an action against the Michigan Economic Development Corporation under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*., seeking the disclosure of information regarding the tax credits that defendant had allowed General Motors LLC (GM) to claim under the Michigan Economic Growth Authority Act, MCL 207.801 *et seq*. (the MEGA Act), which gave defendant the authority to award businesses tax credits through the Michigan Strategic Fund. Defendant had provided plaintiff with a 2016 agreement between GM and defendant regarding the tax credits, but it had redacted the amount of the "tax credit cap," which the agreement defined as the total value of tax credits that GM could claim under the MEGA Act over the term of the agreement. Defendant claimed that the dollar value of the tax credits was exempt from disclosure under the Michigan Strategic Fund Act, MCL 125.2003 *et seq*. The Court of Claims, CHRISTOPHER M. MURRAY, J., granted summary disposition to defendant on the basis that the information was exempt from disclosure under MCL 125.2005(9), which exempts records or data related to financial or proprietary information submitted by the applicant, because the total value of the credits awarded to GM had been prepared using internal financial information provided to defendant for the purpose of calculating the award. The Court of Appeals, RONAYNE KRAUSE, P.J., and SERVITTO and BOONSTRA, JJ., affirmed the Court of Claims decision in an unpublished per curiam opinion issued June 4, 2020 (Docket No. 350764), holding that the requested record was confidential under MCL 125.2005(9) and was not required to be disclosed under MCL 125.2005(11), which provides that certain documents cannot be exempted from disclosure under MCL 125.2005(9) as financial or proprietary information. The Court of Appeals reasoned that MCL 125.2005(11) concerns documents rather than information and that the total value of the tax credits was properly categorized as information. Plaintiff sought leave to appeal in the Supreme Court, which directed oral argument on the application for leave to appeal. 507 Mich 928 (2021).

In a unanimous per curiam opinion, the Supreme Court, in lieu of granting leave to appeal, *held*:

The "tax credit cap" provision of the agreement between defendant and GM fit within the FOIA exemption in MCL 125.2005(9); however, because it also fell under the exception to this

exemption set forth in MCL 125.2005(11), it was nonetheless subject to disclosure. The Court of Appeals' judgment to the contrary was reversed.

1. MCL 15.231(2) states that the purpose of FOIA is to provide the people of Michigan with full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees so that they may fully participate in the democratic process. To effectuate this objective, MCL 15.233(1) states that upon providing a public body's FOIA coordinator with a written request that describes a public record sufficiently to enable the public body to find the public record, a person has a right to inspect, copy, or receive copies of the requested public record of the public body, except as expressly provided in MCL 15.243. Among the exceptions in this provision is records or information specifically described and exempted from disclosure by statute.

2. MCL 125.2005(9) creates an exemption to FOIA disclosure for records or portions of a record, material, or other data that is received, prepared, used, or retained by the Michigan Strategic Fund if the record is used in connection with an application to or with a project or product assisted by the fund or with an award, grant, loan, or investment. To qualify for this exemption, the record, material, or other data must relate to financial or proprietary information submitted by the applicant, and that information must also be considered by the applicant and acknowledged by the board as confidential. Considering the lay definition of "relate" at the time this provision was enacted, it was apparent that the total possible value of GM's tax credits related to financial or proprietary information for purposes of MCL 125.2005(9). However, MCL 125.2005(11) excludes certain materials from the exemption in MCL 125.2005(9), including any document to which the fund is a party evidencing an agreement that the fund is authorized to enter. Because the agreement extending the tax credits met these conditions, MCL 125.2005(11) prevented it from qualifying for the exemption under MCL 125.2005(9).

3. The Court of Appeals erred by concluding that MCL 125.2005(11) applied to the document but not the information in it, including the potential value of the tax credits under the agreement. The plain text of MCL 125.2005(11) states that the document itself is not to be considered financial or proprietary information that may be exempt from disclosure under MCL 125.2005(9). By exempting records and other specified materials that relate to "financial and proprietary information," Subsection (9) shields financial and proprietary information from disclosure. Subsection (11), in turn, removes this protection from a class of documents by stating that they are not information protected by Subsection (9). In this way, the statute itself links the terms "document" and "information" in a manner that suggests the two terms have significant overlap in this context, and there would be no need for Subsection (11) to exclude these documents from the scope of "financial or proprietary information" if the documents did not relate to such information. Moreover, the Court of Appeals' interpretation would render Subsection (11) nearly meaningless, as it would not allow disclosure of anything already exempt under Subsection (9). Because the agreement between GM and defendant fell under Subsection (11), it was subject to disclosure even though information contained within it fit within the exemption language of Subsection (9). This conclusion was buttressed by the constitutional-doubt canon, which states that when the constitutional validity of an act is in question, a reviewing court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided. Defendant's preferred construction of MCL 125.2005 would raise serious doubts about its

constitutionality under Const 1963, art 9, § 23, which states that all financial records, accountings, audit reports, and other reports of public moneys are public records that are open to inspection.  In this case, a saving construction of the statute, under which the agreement at issue must be disclosed in full, was not only fairly possible but was plainly required by the ordinary meaning of MCL 125.2005.

Reversed and remanded to the Court of Claims for further proceedings.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED June 29, 2022

STATE OF MICHIGAN

SUPREME COURT

DAVID SOLE,

      Plaintiff-Appellant,

v

No. 161598

MICHIGAN ECONOMIC
DEVELOPMENT CORP.,

      Defendant-Appellee.

BEFORE THE ENTIRE BENCH

PER CURIAM.

In this action under the Freedom of Information Act (FOIA), MCL 15.231 *et seq*.,
plaintiff, David Sole, claims that he is entitled to disclosure of the unredacted version of
the agreement between General Motors LLC (GM) and defendant, the Michigan Economic
Development Corporation, which would show the total value of tax credits that may be
claimed by GM under the Michigan Economic Growth Authority (MEGA) Act, MCL
207.801 *et seq*. Defendant, which administers the credits, argues that the total value of the

awardable tax credits is exempt from FOIA disclosure under MCL 125.2005(9) and that the exception to that exemption set forth in MCL 125.2005(11) is inapplicable. In other words, according to defendant, an unredacted version of the agreement is not subject to disclosure. We hold that while the agreement provision at issue, which is known as the "tax credit cap," fits within the terms of MCL 125.2005(9), it is nonetheless subject to disclosure under MCL 125.2005(11). Accordingly, we reverse the Court of Appeals' judgment to the contrary.

## I. FACTS

In 1995, the Legislature enacted the MEGA Act, creating MEGA within the Michigan Strategic Fund (MSF). MCL 207.804(1).[1] Pursuant to the MEGA Act, refundable tax credits were awarded to numerous businesses in the state to promote job creation. Among the businesses receiving tax credits under this program was GM.

In November 2018, plaintiff submitted a FOIA request to defendant seeking, among other things, the total value of the tax credits awarded to GM under the MEGA Act. Defendant eventually provided many documents regarding the credits, but it refused to disclose the "tax credit cap." The "tax credit cap" was defined in the 2016 agreement between GM and defendant as "the total value of MEGA Tax Credits that may be claimed over the Term of the Agreement, up to" a certain dollar value, which was redacted from the agreement provided to plaintiff. Defendant asserted that the total amount of the credits

---

[1] Governor Rick Snyder abolished MEGA in 2012 and transferred its powers and responsibilities to the MSF board. Executive Order No. 2012-9.

2

that could be claimed under the tax credit cap was exempt from disclosure under the MSF Act, MCL 125.2001 *et seq*.

Plaintiff filed a complaint under FOIA seeking the amount and terms of the MEGA tax credits issued to GM for each year they were issued along with information regarding the amendments to the credits, the number of years GM could claim the credits, and related information. Defendant explained that it had provided much of the requested information but again contended that the total amount of the tax credits was confidential and not subject to FOIA's disclosure requirements. The Court of Claims granted summary disposition in favor of defendant on the basis that the information was exempt from disclosure under MCL 125.2005(9), which exempts records or data "relate[d] to financial or proprietary information" submitted by the applicant. The Court explained that the total value of the credits awarded to GM was prepared using internal financial information provided to defendant for the purpose of calculating the award and so fell within the parameters of MCL 125.2005(9). Therefore, defendant was allowed to redact the total possible value of the MEGA credits from documents produced under FOIA. Plaintiff appealed in the Court of Appeals.

The Court of Appeals affirmed the Court of Claims decision in an unpublished per curiam opinion. It held that the requested record was confidential under MCL 125.2005(9). It also held that the requested record was not required to be disclosed under MCL 125.2005(11), which provides that certain documents cannot be exempted from disclosure under MCL 125.2005(9) as financial or proprietary information. It reasoned that MCL 125.2005(11) concerns "document[s]" rather than "information" and that the total value of the tax credits was properly categorized as "information," not a "document." Therefore, it

3

concluded that the Court of Claims acted appropriately by granting defendant's motion for summary disposition. *Sole v Mich Economic Dev Corp*, unpublished per curiam opinion of the Court of Appeals, issued June 4, 2020 (Docket No. 350764). Plaintiff then sought leave to appeal in this Court. We granted oral argument on the application for leave to appeal regarding the following issues:

> (1) whether, at the time of the request and pursuant to MCL 125.2005, the total value of tax credits extended to General Motors was exempt from disclosure under the Freedom of Information Act, MCL 15.231 *et seq*., as "financial or proprietary information" or as "[a] record or portion of a record, material, or other data received, prepared, used, or retained by the fund . . . in connection with an application to or with . . . an award, grant, loan, or investment that relates to financial or proprietary information submitted by the applicant that is considered by the applicant and acknowledged by the board or a designee of the board as confidential"; and (2) whether MCL 125.2005(11) requires the full disclosure, without redaction, of the tax credit agreement because "[a]ny document to which the fund is a party evidencing a loan, insurance, mortgage, lease, venture, or other type of agreement the fund is authorized to enter into shall not be considered financial or proprietary information that may be exempt from disclosure under subsection (9)." [*Sole v Mich Economic Dev Corp*, 507 Mich 928, 928-929 (2021).]

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision to grant summary disposition de novo. *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 84-85; 878 NW2d 816 (2016). We also review de novo issues of statutory interpretation. *Herald Co v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 470; 719 NW2d 19 (2006). In interpreting statutes, "we seek to discern the ordinary meaning of the language in the context of the statute as a whole." *TOMRA of North America, Inc v Dep't of Treasury*, 505 Mich 333, 339; 952 NW2d 384 (2020).

4

## III. ANALYSIS

The issue presented in this case is whether the information plaintiff seeks is exempted from FOIA by MCL 125.2005. The parties agree that the tax credit cap, i.e., the total value of the tax credits that GM can claim, is stated in the agreement defendant entered with GM. The question, then, is whether plaintiff is entitled to an unredacted version of that document.

The Legislature has declared that the residents of this state "are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act . . . so that they may fully participate in the democratic process." MCL 15.231(2). To effectuate this objective, FOIA provides, in pertinent part, that "[e]xcept as expressly provided in [MCL 15.243], upon providing a public body's FOIA coordinator with a written request that describes a public record sufficiently to enable the public body to find the public record, a person has a right to inspect, copy, or receive copies of the requested public record of the public body." MCL 15.233(1). Thus, "FOIA is intended primarily as a prodisclosure statute . . . ." *Swickard v Wayne Co Med Examiner*, 438 Mich 536, 544; 475 NW2d 304 (1991). However, as this Court has recognized, the Legislature also codified exemptions from the disclosure requirement to "shield[] some 'affairs of government' from public view." *Herald Co*, 475 Mich at 472. This includes "[r]ecords or information specifically described and exempted from disclosure by statute." MCL 15.243(1)(d). We have stated that the FOIA disclosure exemptions must be narrowly construed. *Kent Co Deputy Sheriff's Ass'n v Kent Co Sheriff*, 463 Mich 353, 360; 616 NW2d 677 (2000).

5

Here, the parties contest the application of one such exemption, MCL 125.2005(9), part of the MSF Act. Under that provision,

> [a] record or portion of a record, material, or other data received, prepared, used, or retained by the fund or any of its centers in connection with an application to or with a project or product assisted by the fund or any of its centers or with an award, grant, loan, or investment that relates to financial or proprietary information submitted by the applicant that is considered by the applicant and acknowledged by the board or a designee of the board as confidential shall not be subject to the disclosure requirements of the freedom of information act, 1976 PA 442, MCL 15.231 to 15.246.

Subsection (9) creates an exemption to FOIA disclosure with several layered requirements. It applies to "[a] record" or "[a] portion of a record, material or other data" that is "received, prepared, used, or retained by [the MSF.]" That record must be used "in connection with an application to or with a project or product assisted by the fund" or "with an award, grant, loan, or investment." And it must "relate[] to financial or proprietary information submitted by the applicant." That information must also be "considered by the applicant and acknowledged by the board . . . as confidential." Only if all these requirements are met would the exemption apply.

Two other provisions of the MSF Act provide context for this exemption. MCL 125.2005(12) defines "financial or proprietary information" as "information that has not been publicly disseminated or which is unavailable from other sources, the release of which might cause the applicant significant competitive harm." However, MCL 125.2005(11) excludes certain materials from the exemption in Subsection (9), meaning they are subject to disclosure under FOIA: "Any document to which the fund is a party evidencing a loan, insurance, mortgage, lease, venture, or other type of agreement the fund is authorized to

6

enter shall not be considered financial or proprietary information that may be exempt from disclosure under subsection (9)."[2]

With regard to the requirements of Subsection (9), the parties do not dispute that the requested information is a "portion of a record" retained by the fund and connected to GM's tax credit application. Nor do they dispute that the credits are awarded on the basis of defendant's review of "financial or proprietary information" submitted by GM. The parties also do not dispute that defendant followed the proper procedure to acknowledge the information submitted by the applicant as confidential. Rather, the parties contest whether the tax credit cap "*relates to* financial or proprietary information submitted by the applicant." MCL 125.2005(9) (emphasis added).

---

[2] The MEGA Act includes its own FOIA exemption and exception, which closely resemble those in MCL 125.2005. Under the exemption,

> [a] record or portion of a record, material, or other data received, prepared, used, or retained by the authority in connection with an application for a tax credit under [MCL 207.809]that relates to financial or proprietary information submitted by the applicant that is considered by the applicant and acknowledged by the authority as confidential shall not be subject to the disclosure requirements of the freedom of information act, 1976 PA 442, MCL 15.231 to 15.246. [MCL 207.805(3).]

MCL 207.805(5) provides the same definition of "financial or proprietary information" as that in the MSF Act, but also states that "[f]inancial or proprietary information does not include a written agreement" under the MEGA Act."

The parties have not addressed the applicability of the MEGA Act to the case before us. Rather, they rely on the MSF Act given the abolition of the MEGA board and the transfer of its powers and duties to the MSF board by Executive Order No. 2012-9. Given the similarities between the exemption and the exception in both acts, it appears that the result would likely be the same under either. Nevertheless, because the parties have framed the case under the MSF Act, we will decide the case under that act and we do not opine on the applicability of the MEGA Act.

In answering this question, we look to the ordinary meaning of the term "relates" at the time the statute was enacted. See *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 563 & n 58; 886 NW2d 113 (2016). Because the statute does not define the term, we may look to a dictionary from the relevant period to ascertain the term's meaning. *Id*. At the time, "relate" was defined to mean "to have reference or relation," and "relation" meant "a significant association between or among things; connection[.]" *Random House Webster's College Dictionary* (1991).

In light of these definitions, it becomes apparent that the total possible value of GM's tax credits relates to financial or proprietary information for purposes of MCL 125.2005(9). The parties agree that GM submitted certain internal financial information with its application for the tax credits, and this information was then used to calculate the value of the tax credits MEGA ultimately awarded. The parties further agree that this information has not been publicly disseminated. Consequently, assuming that the release of it could cause GM significant competitive harm—something the parties do not directly dispute—the information meets the statutory definition of "financial or proprietary information" in MCL 125.2005(12). The part of the record containing the tax credit cap was therefore derived from the financial or proprietary information of an applicant. That is certainly enough to create a "significant association" or "connection" between the record and the information it is derived from. See *Random House Webster's College Dictionary* (1991). As such, it relates to otherwise protected financial or proprietary information.

If this were the end of the analysis, the record would be exempt from disclosure under MCL 125.2005(9). But it is not the end, as MCL 125.2005(11) carves out an exception to MCL 125.2005(9). The question under Subsection (11) is whether the

8

agreement here is a "document to which the fund is a party evidencing . . . [an] agreement the fund is authorized to enter into . . . ." MCL 125.2005(11). If so, then the document cannot be considered financial or proprietary information that can be exempted from disclosure under Subsection (9). The document at issue here is the agreement extending the tax credits. No one contests that defendant is a party to the agreement and that defendant has the authority to enter into that agreement. Therefore, Subsection (11) applies and the agreement is not "financial or proprietary information that may be exempt from disclosure under subsection (9)." The document cannot be exempt under Subsection (9).

Defendant presses the interpretation adopted by the Court of Appeals, which held that Subsection (11) applies to the document but not the information in it. Thus, because the potential value of the tax credits is information that would be exempt under Subsection (9), that information would remain exempt. All that Subsection (11) requires, under this reading, is handing over the agreement—the information in it can be redacted.

Redaction is sometimes required in a document that is otherwise subject to disclosure. FOIA provides that "[i]f a public record contains material which is not exempt under [MCL 15.243], as well as material which is exempt from disclosure under [MCL 15.243], the public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying." MCL 15.244(1); see also *Bradley v Saranac Community Sch Bd of Ed*, 455 Mich 285, 304; 565 NW2d 650 (1997) (noting that redaction of information is sometimes appropriate if the information "falls within an exemption of the FOIA").

The Court of Appeals suggested that MCL 125.2005(11) applies only to documents and not the underlying information "because a document is not the same thing as

information." *Sole*, unpub op at 6. That may be true, as far as it goes, but it overlooks the plain text of that provision, which says that the document itself is not to be considered "financial or proprietary *information* that may be exempt from disclosure under subsection (9)." (Emphasis added.) By exempting records and other specified materials that relate to "financial and proprietary information," Subsection (9) shields "financial and proprietary information" from disclosure. Subsection (11), in turn, removes this protection from a class of documents by stating that they are not information protected by Subsection (9). In this way, the statute itself links the term "document" and the term "information" in a manner that suggests the two terms have significant overlap in this context. Indeed, there would be no need for Subsection (11) to exclude these documents from the scope of "financial or proprietary information" if the documents did not relate to such information. It would be a strained interpretation to conclude that the document is not "financial or proprietary information," but its contents are. Thus, there is no basis in the text for the conclusion that Subsection (11) is limited to the document itself and not its contents.

Moreover, the result of the Court of Appeals' reading would seem to be that a defendant could hand over a fully redacted document. It is unclear what purpose such a document would serve. Cf. *Bradley*, 455 Mich at 305 ("This objective [of FOIA to allow citizens to obtain information about their government] is hindered when a citizen requests information, only to be provided with an edited version that gives no indication of the true content of the document."). This interpretation would render Subsection (11) nearly meaningless, as it would not allow disclosure of anything already exempt under Subsection (9). We are loath to interpret statutes in a way that deprives them of all meaning, and we are not compelled to reach a conclusion that does so here. See *People v Pinkney*, 501 Mich

10

259, 282-283; 912 NW2d 535 (2018) (explaining the interpretive canon against surplusage). Thus, we conclude that because the agreement between GM and defendant falls under Subsection (11), it is subject to disclosure even though information contained within it fits within Subsection (9)'s exemption language.[3]

Our conclusion is buttressed by the constitutional-doubt canon because the contrary interpretation would raise significant doubts about the constitutionality of MCL 125.2005. " 'When the validity of an act . . . is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.' " *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 508; 274 NW2d 373 (1979), quoting *Ashwander v Tennessee Valley Auth*, 297 US 288, 348; 56 S Ct 466; 80 L Ed 688 (1936) (quotation marks omitted). Accordingly, under the constitutional-doubt canon, courts reasonably presume that the Legislature did not intend to enact a statute that "raises serious constitutional doubts." *Clark v Martinez*, 543 US 371, 381; 125 S Ct 716; 160 L Ed 2d 734 (2005).

Here, defendant's preferred construction of MCL 125.2005 raises serious doubts about its constitutionality under Const 1963, art 9, § 23. Under the statute, defendant cannot "disclose financial or proprietary information not subject to disclosure pursuant to subsection (9)" without the applicant's approval. MCL 125.2005(10). Thus, if MCL 125.2005(9) applies, the unredacted tax credit agreement is not available to the public absent GM's approval. This potentially conflicts with Const 1963, art 9, § 23, which

---

[3] Whether redaction of information exempt under a provision other than Subsection (9) would be necessary is a question we need not decide.

11

commands that "[a]ll financial records, accountings, audit reports[,] and other reports of public moneys shall be public records and open to inspection." Const 1963, art 9, § 23. The Court of Appeals has held that this provision requires disclosure of documents sufficient "to allow the public to keep their finger on the pulse of government spending." *Grayson v Mich State Bd of Accountancy*, 27 Mich App 26, 34; 183 NW2d 424 (1970). In this way, Const 1963, art 9, § 23 and FOIA share the common goal of promoting transparency and "facilitat[ing] the public's understanding of the operations and activities of government." *Detroit Free Press, Inc v Dep't of Consumer & Indus Servs*, 246 Mich App 311, 315; 631 NW2d 769 (2001) (discussing FOIA).

At the time this text was ratified, the term "financial" was defined as "of or relating to money and its use and distribution" and "record" was defined as "an official document that records the actions of a public body or officer." *Webster's New Collegiate Dictionary* (1973). "Report" means "a usu[ally] detailed account or statement." *Id*. A tax credit agreement like the one here may well fall within these terms. It certainly relates "to money and its use and distribution." And the agreement itself—a binding legal contract between a public body and a corporation—might be considered the "official document that records the action of" defendant, a public body, or an "account or statement" of the body's financial transactions. Through the agreement, defendant extended billions of dollars of tax credits to GM, thereby allowing GM to reduce its tax liability or claim refunds. See MCL 208.1431(1) (providing that the tax credits may be claimed "against" tax liability); MCL 208.1431(5) ("If the credit allowed under this section exceeds the tax liability of the taxpayer for the tax year, that portion of the credit that exceeds the tax liability of the

12

taxpayer shall be refunded.");[4] see generally *Stege v Dep't of Treasury*, 252 Mich App 183, 194; 651 NW2d 164 (2002) ("[Tax] credits are applied *to* tax liability, if any."). Because the agreement involved the amount of taxes due to the state or direct distributions from the state's coffers, the agreement arguably concerned "public moneys" under Const 1963, art 9, § 23. Cf. *United States v Hoffman*, 901 F3d 523, 537 (CA 5, 2018) ("Tax credits are . . . the functional equivalent of government spending programs."). Thus, a strong argument could be made that the agreement is a "financial record[]" or "other report[] of public moneys . . . ." If so, then the Constitution would require it to be made public. To the extent MCL 125.2005 exempted such agreements from disclosure, the statute would be unconstitutional.

To avoid the doubts raised by defendant's interpretation, the constitutional-doubt canon would require us to adopt any other construction of the statute that is " 'fairly possible.' " *Workman*, 404 Mich at 508, quoting *Ashwander*, 297 US at 348. Here, a saving construction of the statute, under which the agreement must be disclosed in full, is not only fairly possible but is plainly required by the ordinary meaning of MCL 125.2005. We therefore hold that the agreement falls squarely within the terms of MCL 125.2005(11). It does not constitute "financial or proprietary information" protected by the FOIA exemption in MCL 125.2005(9). Consequently, it is subject to disclosure under FOIA.

---

[4] These provisions have since been repealed, but only with respect to tax years that begin after December 31, 2031. See 2019 PA 90.

13

## IV. CONCLUSION

For the reasons above, we conclude that MCL 125.2005(11) requires defendant to disclose an unredacted version of the tax credit agreement containing the "tax credit cap" of the tax credits awarded to GM under the MEGA Act in response to plaintiff's FOIA request. Therefore, we reverse the Court of Appeals judgment and remand to the Court of Claims for further proceedings not inconsistent with this opinion.

Bridget M. McCormack
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

14